HABEAS CORPUS BY A PERSON IN STATE CUSTODY

ORIGINAL

| United States District Court | District Eastern District of New York |
|---|---|

| Name (under which you were convicted): Ruben Beltran | Docket or Case No.: 880/2009 |
|---|---|

| Place of Confinement: Sullivan Correctional Facility | Prisoner No.: 10A3301 |
|---|---|

| Petitioner (include the name under which you were convicted) RUBEN BELTRAN | v. | Respondent (authorized person having custody of petitioner) WILLIAM F. KEYSER, Superintendent Sullivan Correctional Facility |
|---|---|---|

The Attorney General of the State of New York

CV 15    7201

AMON, CH.J.

## PETITION

1. (a) Name and location of court which entered the judgment of conviction you are challenging: Brooklyn Supreme Court, Kings County, 320 Jay Street, Brooklyn, NY 11201

   (b) Criminal docket or case number: 880/2009

2. (a) Date of judgment of conviction: January 26, 2010

   (b) Date of sentencing: June 23, 2010

3. Length of sentence: 32 years

4. In this case, were you convicted on more than one count or of more than one crime?   Yes [X]   No [ ]

5. Identify all crimes of which you were convicted and sentenced in this case:

   Course of Sexual Conduct Againts a Child in the First Degree (2 Counts) P.L. 130.75(1)(a).

   Sexual Abuse in the First Degree (1 Count) P.L. 130.65(3)

   Endangering the welfare of a child (2 Counts) P.L. 260.10(1)

6. (a) What was your plea? (Check one)

   (1) Not Guilty [X]

   (2) Guilty [ ]

   (3) Nolo Contendere (No contest) [ ]

   (4) Insanity plea [ ]

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ DEC 14 2015 ★

BROOKLYN OFFICE

(b) if you entered a guilty plea to one count or charge and not guilty plea to another count or charge, what did you plead guilty to and what did you plea not guilty to?_____

(c) If you went to trial, did you have? (Check one)

Jury [X]      Judge only [ ]

7. Did you testify at either a pretrial hearing, trial or a post-trial hearing?

Yes [X]     No [ ]

8. Did you appeal from the judgment of conviction?

Yes [X]     No [ ]

9. If you did appeal, answer the following:

(a) Name of court: Supreme Court of the State of New York, Appellate Division: Second Department.

(b) Docket or case number (if you know): N/A

(c) Result: Denied

(d) Date of result (if you know): August 14, 2013

(e) Citation to the case (if you know): Don't know.

(f) Grounds raised:

(f-1) Denial of due process right to a fair trial when the court refused to grant a mistrial after a child witness was unable to testify in open court due to uncontrollable crying.

(f-2) That the court's used of a closed-circuit television without following the proper statutory procedures violated petitioner's confrontation rights.

(f-3) That he was denied a fair trial because of the joining of unrelated charges.

(f-4) That his conviction for a second count of course of sexual conduct was multiplicitous.

(f-5) That his sentence was excessive.

SUPPLEMENTAL BRIEF BY PETITIONER

(f-6) Trial counsel failed to consult with or call a psychological expert.

(f-7) Trial counsel failed to call a medical expert to challenge in court the medical evidence of penetration.

(f-8) Trial counsel failed to consult or call an expert in the field of sexually transmitted diseases.

2

(f-9) Trial counsel failed to properly make the Court aware of petitioner's level of hearing impairment.

(f-10) Trial counsel failed to call petitioner's wife as a defense witness.

(f-11) Trial counsel elicited damaging testimony of uncharged crimes from a state witness.

(f-12) The used of an enlarged "before" portrait that included complainant's sister, deprive petitioner of a fair trial.

(g) Did you seek further review by a higher state court? Yes [X]   No [ ]

If yes, answer the following:

(1) Name of court:  State of New York Court of Appeals

(2) Docket or case number (if you know):  N/A

(3) Result:  Denied

(4) Date of result (if you know):  June 10, 2014

(5) Citation to the case (if you know):  N/A

(6) Grounds raised:  SAME AS ANSWER 9(f)

(h) Did you file a petition for centiorari in the United States Supreme Court?   Yes [ ]   No [X]

If yes, answer the following:

(1) Docket or case number (if you know):  Don't know.

(2) Result:  N/A

(3) Date of result (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petition, application, or motions concerning this judgment of conviction in any state court?

Yes [X]   No [ ]

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:  Brooklyn Supreme Court, Kings County.

(2) Docket or case number (if you know):  N/A

(3) Date of filing (if you know):  December 3, 2011

(4) Nature of the proceeding:  440.10 Motion

(5) Grounds raised:  Ineffective Assistance of Counsel

(6) Did you received a hearing where evidence was given on your petition, application, or motion?

Yes [X]   No [ ]

(7) Results:  Denied

3

(8) Date of result (if you know): March 16, 2012

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Brooklyn Supreme Court, Kings County

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): September 3, 2014

(4) Nature of the proceeding: 440.10 Motion

(5) Grounds raised: Misrepresentation and inadmissibility of medical evidence.

(6) Did you received a hearing where evidence was given on your petition, application, or motion?

Yes [ ]    No [X]

(7) Results: Denied on the papers

(8) Date of result (if you know): November 25, 2014

(c) If you filed any third petition, application, or motion, give the same information: N/A

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes [ ]    No [ ]

(7) Results: N/A

Date of result (if you know): N/A

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:     Yes [X]   No [ ].

(2) Second petition:    Yes [X]   No [ ]

(3) Third petition:     Yes [ ]   No [ ]

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: N/A

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more that four grounds. State the facts supporting each ground.

4

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: Mr. Beltran was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when trial counsel failed to call a psychological expert for the defense.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): At trial, the prosecution introduce psychological testimony in the form of Dr. Donald Lewittes. Defense counsel introduce no one. Instead he relied, as stated in his post-conviction affirmation, in response to Mr. Beltran's 440 motion for ineffective assistance of counsel, to "obtained and reviewed transcripts of Dr. Lewittes testimony from previous trials as well as researched case law regarding suggestive child interviewing techniques." After which he "concluded that this would have been the most effective way in which to impeach Dr. Lewittes, instead of presenting a defense psychological expert."

Researching "suggestive child interviewing techniques" was of no help, since Dr. Lewittes never spoke to Vanessa Flores.

At trial, defense counsel went on to cross-examine Dr. Lewittes about a child abuse case in California and hypothetical questions about children lying about sex abuse. Had trial counsel presented a psychological expert for the defense, there is a reasonable probability of a different outcome. His failure to provide a psycological expert, violated Mr. Beltran's right to effective assistance of counsel.

5

(b) If you did not exhaust your state remedies on Ground One, explain why: N/A

(c) Direct Appeal of Ground One:

    (1) If you appealed from the judgment of conviction, did you raise this issue?   Yes [X]   No [ ]

    (2) If you did not raise this issue in your direct appeal, explain why:    N/A

(d) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
        Yes [X]   No [ ]

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: 440.10 motion

    Name and location of the court where the motion or petition was filed: Supreme Court, Kings County, 320 Jay Street, Brooklyn, NY 11201.

    Docket or case number (if you know): Don't know.

    Date of the court's decision: March 16, 2012

    Result (attach a copy of the court's opinion or order, if available): Copy attached

    (3) Did you receive a hearing on your motion or petition?
        Yes [X]   No [ ]

    (4) Did you appeal from the denial of your motion or petition?
    Yes[X]   No [ ]

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes[X]   No [ ]

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: <u>Appellate</u>

<u>Division, Second Dept., 45 Monroe Place, Brooklyn, NY 11201</u>

Docket or case number (if you know): <u>AD No. 10-07150</u>

Date of court's decision: <u>June 11, 2012</u>

Result (Attach a copy of the court's opinion or order, if available):

<u>Copy attach</u>

(7) If your answer to Question (d)(4) or Question (d)(5) is "No,"
explain why you did not raise this issue: <u>N/A</u>

(e) Other Remedies: Describe any other procedures (Such as habeas corpus,
administrative remedies, etc.) that you have used to exhaust your
state remedies on Ground One: <u>N/A</u>

GROUND TWO: Mr. Beltran was denied his right to effective assistance of
counsel under the Sixth Amendment to the United States Constitution when
trial counsel failed to call a medical expert for the defense, to
challenge the medical evidence of penetration.

(a) Supporting Facts: Trial counsel stated in his post-conviction
affirmation in response to Mr. Beltran's 440 motion for ineffective
assistance of counsel, that after he reviewed the "medical records of the
complainant," he contacted Dr. Gary Medows, a pediatrician for 40 years
and licensed to practice medicine in New York State.

After consulting with Dr. Medows, he concluded that, "it was neither
necessary nor advisable trial strategy to call a medical expert on the
defense case." And that it was his professional opinion, "that a doctor
would not have been able to significantly contradict the People's medical
evidence."

Instead, he decided to "use information that [he] learned from Dr.
Medows, to cross-examine [Dr. Nayan] regarding the four tears to

7

Vanessa Flores's hymen, rather than present a defense expert," because in his "professional opinion, calling such a witness would have allowed the prosecution to reiterate and highlight their evidence during cross-examination of the defense doctor."

At trial, defense counsel made no effective challenge to the only physical evidence of sexual intercourse and although counsel question the "age" of the tears, the fact that a hymen was still present after allegedly having intercourse "once every two weeks" for 38 months, was never challenged by defense counsel.

Dr. Medows, during the November, 2011 hearing for ineffective assistance of counsel, stated "that there was a hymen at all would completely surprise me." Something that he expressed to defense counsel during their phone "consultations." This alone, would have been significant testimony and evidence that the need for expert testimony would had undermine the prosecutor's expert testimony and bring about a different outcome.

Trial counsel's failure to present a medical expert at trial, severely undermine the defense and failed to provide effective assistance of counsel.

(b) If you did not exhaust your state remedies on Ground Two, explain why:___N/A_____

(c) Direct Appeal of Ground Two:

   (1) If you appealed from the judgment of conviction, did you raise this issue?   Yes[X]   No [ ]

   (2) If you did not raise this issue in your direct appeal, explain why: ___N/A_____

(d) Post-Conviction Proceedings:

8

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes [X]   No [ ]

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: 440.10 motion

Name and location of the court where the motion or petition was filed: Supreme Court, Kings Counrt, 320 Jay Street, Brooklyn, NY 11201.

Docket or case number (if you know): Don't know.

Date of the court's decision: March 16, 2012

Result (attach a copy of the court's opinion or order, if available):

Copy attach

(3) Did you receive a hearing on your motion or petition?

Yes [X]   No [ ]

(4) Did you appeal from the denial of your motion or petition?

Yes [X]   No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes [X]   No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Appellate Division, Second Dept., 45 Monroe Place, Brooklyn, NY 11201

Docket or case number (if you know): AD No. 10-07150

Date of court's decision: June 11, 2012

Result (attach a copy of the court's opinion or order, if available):

Copy attach

(7) if your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: __N/A__

**Ground Three:** Mr. Beltran was denied a fair trial under the Fourteenth Amendment to the United States Constitution when the court failed to provided adequate assistance for Mr. Beltran's hearing impairment.

(a) **Supporting Facts:** Despite trial counsel's knowledge from the beginning and awareness of Mr. Beltran's hearing impairment level, having medical evidence of his disability (which defense counsel never showed to the court), and Mr. Beltran asking him to request the judge for headphones, trial counsel failed to do so, and instead only made the judge vaguely aware of some "hearing loss."

The judge then said that he didn't "have anplified speakers," which is why Mr. Beltran could not hear him. The judge mention that Mr. Beltran "seems to have understood me." Mr. Beltran clarified that he heard the judge the first time he spoke directly at him, when advising Mr. Beltran of the consequences of a guilty verdict. But Mr. Beltran did not heard clearly when the judge was addressing trial counsel. Mr. Beltran went on to explained that if "I concentrated really hard and people are not talking in a low voice, and talk in a very strong volume, I can manage."

Mr. Beltran, not aware yet of the changing court environment during trial, told the judge that "this is perfect right here (the only ones present in the courtroom at that moment was; the judge, two ADA, defendant and counsel, two court officers and stenographer). The judge went on to explained that they will "have the microphone on for any of the witnesses that come in and testify so you can hear." Mr. Beltran, unaware of any other options, told the judge that "the more direct, the

better. If they turn their faces or anything like that, then I lose it."
The judge asked Mr. Beltran to "let [him] know if there's a problem."

The first time the judge asked a witness to move closer to the
microphone, was during Vanessa Flores's testimony. But after a couple of
minutes, the witness, like every other witness, started to lean back,
away from the microphone, put her head down, and eventually Mr. Beltran
was not able to hear the testimony. Attempts to make trial counsel aware
of this were met with, "stop buzzing in my ear" as a response.

At one point, Mr. Beltran notice the trial transcript at the defense
table and asked trial counsel if he could look at it. Mr. Beltran quickly
scan Vanessa Flores's testimony to confirm how much he didn't heard or
misunderstood. Mr. Beltran asked trial counsel to recalled Vanessa
Flores, because he had evidence that could "cast some serious doubt on
her testimony."

Trial counsel told Mr. Beltran that it was too late to recalled the
witness. Trial counsel then addresses the court: "Your Honor, I--at some
point during the course of the proceedings, Mr. Beltran, I indicated that
it's come out at trial, he has a hearing problem. I thought that this was
not a problem when we use the mics. He's indicated to me now that there
is some issues because he's looking at the transcript, that there might
be things that he thought he heard, or that he didn't pick up because of
his problem. Now, I know most of the trial has occured. I would ask that,
is there any way again to make sure that witnesses speak into the
microphone?" The judge then answer: "I will tell them."

This lead to the third and final time that the judge reminded any
witness to move closer to the microphone. It was at the beginning of Dr.
Nayan's testimony. And just like in the previous occassions, after a
couple of minutes, the witness would lean back in the chair, and the

11

judge never remind her to move closer to the microphone again during the rest of her testimony.

Going by the transcript, it appears that, if not reminded by the defense, the only time the judge would had reminded a witness to speak into the microphone, sua ponte, was during Vanessa Flores's testimony.

Mr. Beltran did not asked for that accomodation. the judge took the responsability to remind the witnesses to move closer to the microphone. A task that required constant attention and needed to be done continually due to the witnesses tendency to recline away from the microphone after a couple of minutes of first sitting at the witness stand. The judge was also being made aware of Mr. Beltran's hearing impairment through testimony from the prosecutor's witnesses.

According to all supportive documentation, Mr. Beltran's hearing impairment was/is very real, and contrary to the judge's opinion, credible. Due to the failure of the court to provide Mr. Beltran with the means to clearly understand crucial testimony againts him, his right to a fair trial was violated.

(b) If you did not exhaust your state remedies on Ground Three, explain why:___N/A_____

(c) Direct Appeal on Ground Three:

    (1) If you appealed from the judgment of conviction, did you raise this issue?  Yes [X]  No [ ]

    (2) If you did not raise this issue in your direct appeal, explain why:_N/A_____

(d) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
    Yes [ ]  No [X]

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: ___N/A___ .

Name and location of the court where the motion or petition was filed: ___N/A___

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?

Yes [ ]   No [ ]

(4) Did you appeal from the denial of your motion or petition?

Yes [ ] · No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes [ ]   No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed: ___N/A___

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: ___N/A___

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: ___N/A___

GROUND FOUR: Mr. Beltran was denied a fair trial under the Fourteenth Amendment to the United States Constitution when the prosecutor used an enlarged "before" photo that included Vanessa Flores's sister.

(a) Supporting Facts: During Vanessa Flores's testimony, the court allowed, over defense counsel's objection, the introduction of two large, poster size photographs meant to demonstrate to the jury how Vanessa Flores looked at the beginning and at the end of the time period alleged by Vanessa Flores.

The prosecutor, when enlarging the pictures, went to the trouble of cropping Exhibit 1-A, bringing the edges of the picture closer to Vanessa Flores, but with Exhibit 1-B, the prosecutor neglected to cut Vanessa Flores's sister out of the picture and in fact made it even larger that Exhibit 1-A, even though the original photos are practically the same size.

During Vanessa Flores's direct testimony, the prosecutor asked: "And if you could look at 1-B, which is the bigger of the two, do you recognize that?" Answer: "Yes." Question: "What is that?" Answer: "That's a picture of me and my sister at the hospital."

The enormous prejudice generated by the inclusion of Vanessa Flores's sister in the photograph, outweights any slight probative value that it may have, and deprive petitioner of a fair trial.


(b) If you did not exhaust your state remedies on Ground Four, explain why: __N/A_____

(c) Direct Appeal on Ground Four:

    (1) if you appealed from the judgment of conviction, did you raise this issue?  Yes [X]   No [ ]

    (2) If you did not raise this issue in your direct appeal, explain why: __N/A_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post—conviction motion or petition for habeas corpus in a state trial court?

Yes [ ]   No [X]

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: __N/A__

Name and location of the court where the motion or petition was filed: __N/A__

Docket or case number (if you know): __N/A__

Date of the court's decision: __N/A__

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?

Yes [ ]   No [ ]

(4) Did you appeal from the denial of your motion or petition?

Yes [ ]   No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes [ ] No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed: __N/A__

Docket or case number (if you know): __N/A__

Date of the court's decision: __N/A__

Result (attach a copy of the court's opinion or order, if available);

(7) if your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: __N/A__

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: __N/A__

15

GROUND FIVE: Mr. Beltran was denied a fair trial under the Fourteenth Amendment of the Constitution of the United States when the prosecutor misrepresented to the jury, the medical results of Vanessa Flores's examination, performed under a "one time only" allegation, as corroboration of up to 76 acts of intercourse.

(a) Supporting Facts: On March, 2008, Vanessa Flores alleged to her mother, police, Dr. Nayan, social worker, prosecutor and the grand jury, that Mr. Beltran had sexual intercourse with her "one time only," when she was five years old. The results of her examination by Dr. Nayan, found four tears on her still visible hymen. The examination was performed with the naked eye and the prosecution has conceded that no colposcope was used.

Nine months later, Vanessa Flores change her story from "one time only" to "once every two weeks" for 38 months (from June, 1998 through August, 2001), for a possible total of 76 acts of intercourse. No further examination was performed to corroborate her new allegations.

At trial, the prosecution "recycle" the medical evidence that they used to obtain an indictment on the first allegation of "one time only," to corroborate at trial, an allegation of up to 76 acts of intercourse, and therefore, failed to produce legally sufficient evidence to support an allegation of multiple acts of sexual intercourse for a period of 38 months.

During opening statements, the prosecutor said to the jury: "You're going to hear about the medical evidence that corroborates Vanessa's account." And during closing she said: "Now, you also got to hear from Dr. Nayan about the medical evidence in this case, and you heard how it corroborates everything that Vanessa told you."

When the prosecutor introduce into evidence a medical report that was

done to support the original allegation of "one time only," and not the later allegation of "once every two weeks" for 38 months, she misrepresented the evidence and violated Mr. Beltran's right to a fair trial.

(b) If you did not exhaust your state remedies on Ground Five, explain why: N/A

(c) Direct Appeal of Ground Five:

    (1) If you appealed from the judgment of conviction, did you raise this issue?  Yes [ ]   No [X]

    (2) If you did not raise this issue in your direct appeal, explain why: The issue was not brough up during trial, therefore, there was nothing on the record that could be use for direct appeal.  The issue was brough to the court's attention via a 440 motion, filed on Sept. 3, 2014.  (See Question 11[b])

(d) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
    Yes [X]   No [ ]

    (2) If your answer to Question (d)(1) is "Yes," state:
Type of motion or petition: 440.10 motion
Name and location of the court where the motion or petition was filed: Supreme Court, Kings County, 320 Jay Street, Brooklyn, NY 11201.
Docket or case number (if you know): Don't know.
Date of the court's decision: November 26, 2014.
Result: Copy attach.

    (3) Did you receive a hearing on your motion or petition?
    Yes [ ]   No [X]

(4) Did you appeal from the denial of your motion or petition?

Yes [X]   No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes [X]   No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: State of New York Court of Appeals, Eagle Street, Albany, NY 12207

Docket or case number (if you know): Don't know.

Date of court's decision: September 11, 2015.

Result: Copy attach.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) Other Remedies: Describe any procedures (Such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five: N/A

GROUND SIX: Mr. Beltran was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when trial counsel failed to call Mr. Beltran's wife as a defense witness.

(a) Supporting Facts: Trial counsel stated on his post-conviction affirmation in response to Mr. Beltran's 440 motion for ineffective assistance of counsel, that after metting with Mr. Beltran's wife, Magaly Beltran, he concluded that she would not have been a strong witness for the defense, because she appeared "somewhat emotionally unstable" and "would have been viewed as an interested witness by the jury." Trial counsel alleges that Mr. Beltran's wife was "initially supportive of the prosecution" and that "Mrs. Beltran accompanied Vanessa's mother to the police precint when the abuse was reported and was interviewed by detectives and the district attorney."

18

Having chosen not to call Mrs. Beltran for the defense, trial counsel then decided to state during opening statements that she would testify and during trial asked questions or elicit testimony involving Mrs. Beltran.

Trial counsel also asked the jury during summations to consider that Mr. Beltran may have transmitted HPV to his wife. But then he tells the jury, "of course, that doesn't mean every time somebody has sex with somebody who has an STD they're going to transmit it." And then asked the jury again to considered it anyway. The prosecutor, expecting Mrs. Beltran to testify, tried to put Mrs. Beltran's credibility into question during Mr. Beltran's testimony, by insinuating that she does "stripping videos" and even question the fact that she was a virgin at the time of her marriage, to diminish the expected HPV testimony.

Trial counsel's failure to called Mrs. Beltran, who was outside the courtroom waiting to be call, compromised the defense and profoundly prejudice Mr. Beltran in such a way, that Mr. Beltran did not receive effective representation.

(b) If you did not exhaust your state remedies on Ground Six, explain why: N/A

(c) Direct Appeal on Ground Six:

   (1) If you appealed from the judgment of conviction, did you raise this issue? Yes [X] No [ ]

   (2) If you did not raise this issue in your direct appeal, explain why: N/A

(d) Post-Conviction Proceedings:

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
Yes [X] No [ ]

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: 440.10 motion.

Name and location of the court where the motion or petition was filed: Supreme Court, Kings County, 320 Jay Street, Brooklyn, NY 11201.

Docket or case number (if you know): Don't know.

Date of court's decision: March 16, 2012

Result: Copy attach.

(3) Did you receive a hearing on your motion or petition?

Yes [X]   No [ ]

(4) Did you appeal from the denial of your motion or petition?

Yes [X]   No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes [X]   No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Appellate Division, Second Dept., 45 Monroe Place, Brooklyn, NY 11201

Docket or case number (if you know): AD No. 10-07150

Date of court's decision: June 11, 2012

Result: Copy attach

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:_____ N/A

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Six: N/A

GROUND SEVEN: Mr. Beltran was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when

trial counsel elicited damaging testimony of uncharged crimes from a state witness.

Supporting Facts: Trial counsel, seeking to make Marithza Rodriguez looked like a bad mother, elicited allegations of an uncharged crime of sexual abuse againts Marithza Rodriguez, mother of Susan Rodriguez. Trial counsel fought hard during the Sandoval hearing to prevent the prosecutor from asking Mr. Beltran about an incident of alleged spousal abuse, "because [Mr. Beltran] was going to be significantly and severely prejudice." But then trial counsel open the door to an issue, that under the context of the case, was far more damaging and prejudicial than testimony about an accidental hit to the head with a perfume bottle.

By opening the door and permitting Marithza Rodriguez to further testify about an alleged incident of abuse committed by Mr. Beltran, trial counsel further cause the petitioner to receive an unfair trial.

(b) If you did not exhaust your state remedies on Ground Seven, explain why:     N/A

(c) Direct Appeal on Ground Seven:

    (1) If you appealed from the judgment of conviction, did you raise this issue?   Yes [X]   No [ ]

    (2) If you did not raise this issue in your direct appeal, explain why: N/A

(d) Post Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
    Yes [ ]   No [X]

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:  N/A

Name and location of the court where the motion or petition was filed:  N/A

Docket or case number (if you know):  I don't know.

Date of court's decision: N/A

Result: N/A

(3) Did you receive a hearing on your motion or petition?

   Yes [ ]   No [ ]

(4) Did you appeal from the denial of your motion or petition?

   Yes [ ]   No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

   Yes [ ]   No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of court's decision: N/A

Result: N/A

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Seven:_____

GROUND EIGHT: Mr. Beltran's confrontation rights under the Sixth Amendment of the Constitution of the United States were violated when the court, used its own "personal observations" and the testimony of a non-

expert social worker, as "clear and convincing" evidence, to declared that the child witness was "vulnerable" and therefore, could testify via closed-circuit television.

(a) Supporting Facts: After Susan was twice unable to testify in open court, the court held a hearing, at which a non-expert social worker testified that Susan would suffer mental or emotional harm from testifying in open court. The court declared Susan a vulnerable witness based on its won observations and the lay opinion, without making any of the statutorily required factual findings showing a causal connection between Susan's testimony in open court and the possibility of emotional harm. As a result, the prosecution failed to elicit clear and convincing evidence that Susan was a "vulnerable" witness. Her testimony via closed-circuit television therefore violated Mr. Beltran's confrontation rights.

(b) If you did not exhaust your state remedies on Ground Eight, explain why:__N/A_____

(c) Direct Appeal of Ground Eight:

   (1) If you appealed from the judgment of conviction, did you raise this issue?   Yes [X]   No [ ]

   (2) If you did not raise this issue in your direct appeal, explain why:_N/A_____

(d) Post-Conviction Preceedings:

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      Yes [ ]   No [X]

   (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:_N/A_____

Name and location of the court where the motion or petition was filed:_N/A_____

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result: N/A

(3) Did you receive a hearing on your motion or petition?

Yes [ ]   No [ ]

(4) Did you appeal from the denial of your motion or petition?

Yes [ ]   No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes [ ]   No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of court's decision: N/A

Result: N/A

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) Other Remedies: Describe any procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Eight: N/A

GROUND NINE: The court's refusal to declare a mistrial after a child witness, twice, was unable to testify in open court because of uncontrollable crying, deprive Mr. Beltran of due process in violation of the Fifth and Fourteenth Amendment of the Constitution of the United States.

Supporting Facts: When Susan, twice, attempted to testify in open court,

she cried "continually" and was "overwhelmed to the point where she was just crying and...could not respond." The prejudice to Mr. Beltran, from the jury twice seeing a seven-year-old, so distraught, that she was unable to answer questions, could not have been greater. Defense counsel moved for a mistrial, but the court instead allowed Susan to testify via closed-circuit television, outside of Mr. Beltran's presence. This "remedy" exacerbated the harm to Mr. Beltran, by seemingly confirming the assumption that she was crying because of Mr. Beltran's precence, even though at the oath hearing she spoke without "distress" with Mr. Beltran there. The prejudice from this assumption was insurmountable.

The court's refusal to declare a mistrial, therefore, deprive Mr. Beltran of due process.

(b) If you did not exhaust your state remedies on Ground Nine, explain why: N/A

(c) Direct Appeal on Ground Nine:

    (1) If you appealed from the judgment of conviction, did you raise this issue?   Yes [X]   No [ ]

    (2) If you did not raise this issue in your direct appeal, explain why: N/A

(d) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    Yes [ ]   No [X]

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result: N/A

(3) Did you receive a hearing on your motion or petition?

    Yes [ ]   No [ ]

(4) Did you appeal from the denial of your motion or petition?

    Yes [ ]   No [ ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes [ ]   No [ ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of court's decision: N/A

Result: N/A

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e) Other Remedies: N/A

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition have been presented to the highest state court having jurisdiction?

    Yes [X]   No [ ]

    If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: N/A

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not

been presented, and state your reasons for not presenting them: N/A

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   Yes [ ]   No [X]

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinions or orders, if available:  N/A

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   Yes [ ]   No [X]

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised:   N/A

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:  Edward Freeman, 32 Court St., Brooklyn, NY 11201

(b) At arraignment and plea:  Edward Freeman, 32 Court St., Brooklyn, NY 11201

(c) At trial:  Edward Freeman, 32 Court St., Brooklyn, NY 11201.

(d) At sentencing:  Harold C. Baker, 32 Court St., Suite 507, Brooklyn, NY 11201

(e) On appeal: Allegra Glashausser, 111 John St., 9th FL, New York, NY 10038

(f) In any post-conviction proceeding: Harold C. Baker, 32 Court St., Suite 507, Brooklyn, NY 11201

27

(g) On appeal from any ruling against you in a post-conviction proceeding: Allegra Glashausser, 111 John St., 9th FL. New York, NY 10038

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

Yes [ ]   No [X]

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: N/A

(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence: N/A

(d) have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?

Yes [ ]   No [ ]

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. §2244(d) does not bar your petition:

My direct appeal was denied on June 10, 2014, by the state highest court, starting the one-year deadline for the habeas.

I filed a 440.10 motion on September 3, 2014, which was denied November 26, 2014 and after reargument, denied again on January 6, 2015. I then submitted the 440 motion for appeal, and was denied by the Appellate Division, Second Dept. on June 23, 2015. I then appeal to the Court of Appeals, which denied me on September 11, 2015, three months after the one-year deadline (June 10, 2015).

28 U.S.C. §2244(d)(2) provides that: the time during which a properly filed application for State post-conviction or other collateral review

with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that this Court grant and issue a writ of habeas corpus, conduct such hearings as may be required, and, upon hearing, grant petitioner relief from his unlawful conviction and sentence, or any other relief to which petitioner may be entitled.

Respectfully submitted,

Ruben Beltran - Pro Se

I declare (or certify, verify, or state) under penalty of purjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on DEC /10 /2015

Sworn to before me this

10 day of December, 2015

NOTARY PUBLIC

Aldana Jefrysson
Notary Public State of New York
Registration #01AL6313544
Qualified in Orange County
Commission Expires 10/20/2018

# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

D37462
O/htr

_____AD3d_____

Argued - November 13, 2012

PETER B. SKELOS, J.P.
L. PRISCILLA HALL
LEONARD B. AUSTIN
SYLVIA HINDS-RADIX, JJ.

2010-07150

OPINION & ORDER

The People, etc., respondent,
v Ruben Beltran, appellant.

(Ind. No. 880/09)

APPEAL by the defendant from a judgment of the Supreme Court (Abraham Gerges, J.), rendered June 23, 2010, and entered in Kings County, convicting him of course of sexual conduct against a child in the first degree (two counts) and sexual abuse in the first degree, upon a jury verdict, and imposing sentence.

> Lynn W. L. Fahey, New York, N.Y. (Allegra Glashausser of counsel), for appellant, and appellant pro se.
>
> Charles J. Hynes, District Attorney, Brooklyn, N.Y. (Leonard Joblove, Keith Dolan, Catherine Dagoneses, and Melissa Causey of counsel), for respondent.

HINDS-RADIX, J.                    The defendant was convicted of two counts of course of sexual conduct against a child in the first degree involving one complainant, and one count of sexual abuse in the first degree involving a second complainant. The first complainant, who was 16 years old at the time of the trial, testified in open court as to events occurring more than eight years earlier. The second complainant (hereinafter the child), who was seven years old at the time of the

trial, testified with the use of live, two-way closed circuit television pursuant to CPL article 65.

CPL article 65 permits the use of closed circuit television in the prosecution of certain sex crimes (*see* Penal Law article 130; Penal Law §§ 255.25, 255.26, 255.27) to elicit the testimony of child witnesses (*see* CPL 65.00[1]) who are "declared to be vulnerable" (CPL 65.00[2]). The primary issue on this appeal is whether the Supreme Court properly declared that the child was a vulnerable witness.

The child was born in 2002. The crime against her occurred in March 2008, when she was six years old. She was able to testify in open court about her ability to take an oath, and with regard to general background material about her family. She described the defendant as her "Uncle Ruben." The child's mother testified that the defendant was married to the mother's aunt, and the aunt and the defendant regularly cared for the child in their residence while the child's mother was at work.

Although the child was able to answer general background questions about her family in open court, when questioned about the incident, in the words of defense counsel, she became "overwhelmed to the point where she was just crying and could not . . . respond." The prosecutor made an oral application pursuant to CPL article 65 asking the court to declare that the child was a vulnerable witness, and noted that the People were "prepared to go forward with a hearing . . . with a social worker who could testify about the trauma . . . that would result from forcing the victim to testify in a public courtroom in front of the defendant." Over defense counsel's objection, the Supreme Court directed a hearing on the issue of whether the child was a vulnerable witness within the meaning of CPL article 65. The Supreme Court found that such a hearing was warranted because the child appeared terrified on the witness stand, was crying constantly, and could not speak. The Supreme Court commented that "there are certain instances when a picture is worth a thousand words," noting that it "had the ability to visually watch this child and saw the trauma that she was going through."

At the ensuing hearing, a social worker who had met with the child on at least five prior occasions testified that the child could describe the sexual abuse to her without becoming visibly upset, but became "very emotionally distraught" in open court when she tried to describe the abuse in the presence of the defendant. She also noted that it took the child "a very long time to calm . . . down after she had left the courtroom." The social worker had never seen the child behave in that manner before. The child told the social worker that she was afraid to talk about the incident

with the defendant in the room.  The social worker stated that it was her "professional assessment" that the child would suffer "severe mental or emotional harm by testifying in open court."  Although the social worker testified as to her professional qualifications, the Supreme Court did not declare her to be an expert witness.

The Supreme Court ruled, on the record, that the child was a vulnerable witness, on the grounds that:

> "From the Court's vantage point on the bench approximately three feet from where the witness was seated, it was clear that the child was in severe emotional distress and appeared terrified.  Based on the Court's own observations and the testimony of the social worker, it is apparent that being in court is exceptionally traumatic for this young child and that she is suffering from severe mental or emotional harm and is unable to testify. While the Court is mindful of the defendant's constitutional rights, the CPL does authorize this testimony. The Court will permit a two-way video feed . . . and we're making sure that the jury will be able to see her testifying and that she will be able to see the complete courtroom."

During the child's testimony, the defendant remained in the courtroom. The prosecutor and defense counsel were in the room with the child, and provisions were made for defense counsel and the defendant to communicate with each other during the testimony.

On appeal, the defendant contends that allowing the child to testify via closed-circuit television outside his physical presence violated his Federal and State constitutional right to confront the witnesses against him because there was no clear and convincing evidence before the court that the child was a vulnerable witness within the meaning of CPL article 65.  In support of his position, the defendant emphasizes that the court declared the child to be a vulnerable witness based only on its own observations and the lay opinion of the social worker.  The People respond that the court properly declared the child to be a vulnerable witness, pointing out that the testimony of an expert witness is not required to support a finding of vulnerability.  The People further contend that the record establishes the presence of at least two of the statutory factors which are relevant to a determination that a child is a vulnerable witness.

We begin our analysis by examining the statutory framework of CPL article 65. CPL article 65 was first enacted in 1985 (*see* L 1985, ch 505, § 1) for an experimental period of three

years, and has thereafter been periodically renewed for additional periods of from one to five years.[1] A child witness was initially defined as a person twelve years old or less, but the definition was amended in 2004 by substituting "fourteen" for "twelve" (L 2004, ch 362, § 2).

CPL 65.10(1) now states:

> "A child witness shall be declared vulnerable when the court, in accordance with the provisions of section 65.20, determines by clear and convincing evidence that it is likely that such child witness will suffer serious mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed circuit television and that the use of such live, two-way closed-circuit television will diminish the likelihood or extent of such harm."

Subsection 2 of the statute adds a further requirement that the "serious mental or emotional harm . . . would substantially impair the child witness' ability to communicate with the finder of fact without the use of live two-way closed-circuit television" (CPL 65.20[2]; see Peter Preiser, 2007 Supp Practice Commentaries, McKinney's Con Laws of NY, Book 11A, CPL 65.20, 2013 Pocket Part at 90).

A declaration of vulnerability may be sought by motion "made in writing at least eight days before the commencement of trial or other criminal proceeding upon reasonable notice to the other party and with an opportunity to be heard" (CPL 65.20[3]). However, pursuant to CPL 65.20(11):

> "Irrespective of whether a motion was made . . . the court, at the request of either party or on its own motion, may decide that a child witness may be vulnerable based on its own observations that a child witness who has been called to testify at a criminal proceeding is suffering severe mental or emotional harm and therefore is physically or mentally unable to testify or to continue to testify in open court or in the physical presence of the defendant and that the use of live, two-way closed-circuit television is necessary to enable the child witness to testify."

---

1. See Laws of 1985, ch 505, § 5; Laws of 1988, ch 516, § 1; Laws of 1991, ch 455, § 3; Laws of 1996, ch 359, § 1; Laws of 2000, ch 449, § 1; Laws of 2001, ch 273, § 1; Laws of 2002, ch 163, § 1; Laws of 2003, ch 388, § 1; Laws of 2005, ch 577, § 1; Laws of 2007, ch 56, part C, § 21; Laws of 2009, ch 56, part U, § 19; Laws of 2011, ch 57, part A, § 19.  The current version expires on September 1, 2015 (Laws of 2013, ch 55, part E, § 18).  In 1988, CPL article 65 was made applicable to juvenile delinquency proceedings in Family Court (see Family Ct Act § 343.1[4], added by L 1988, ch 331, § 1).

August 14, 2013                                                                                        Page 4.

A motion, or a determination that a child witness may be vulnerable pursuant to CPL 65.20(11), triggers the obligation of the trial court to conduct a hearing, and issue findings of fact (*see* CPL 65.20[6], [11]), which shall "reflect the causal relationship between the existence of any one or more of the factors set forth in subdivision nine [sic][2] of this section or other relevant factors which the court finds are established and the determination that the child witness is vulnerable" (CPL 65.20[12]).   The trial court's observations, standing alone, are generally insufficient to support a declaration that the child is a vulnerable witness (*see People v Cintron*, 75 NY2d 249, 265; *People v Costa*, 160 AD2d 889, 890).

CPL 65.20(10) sets forth a list of relevant factors which a court may consider in determining whether a child witness will suffer serious mental or emotional harm if required to testify in court without the use of closed-circuit television. These factors include such considerations as whether the witness "is particularly young" (CPL 65.20[10][b]) and whether the defendant occupied a position of authority over the child (*see* CPL 65.20[10][c]).   CPL 65.00(6) defines a person who occupies "a position of authority with respect to a child" as a person who is:

> "a parent, guardian or other person responsible for the custody or care of the child at the relevant time or is any other person who maintains an ongoing personal relationship with such parent, guardian or other person responsible for custody or care, which relationship involves his or her living, or his or her frequent and repeated presence, in the same household or premises as the child."

When article 65 was originally enacted, a declaration of vulnerability required a determination that, "as a result of extraordinary circumstances . . . such child witness will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television" (CPL former 65.10[1]; *see People v Cintron*, 75 NY2d at 254; *People v Henderson*, 156 AD2d 92, 101).   However, in 2007, the statutory scheme was amended (*see* L 2007, ch 548) to delete the requirement that there must be "extraordinary circumstances," and to modify the degree of mental or emotional harm which the child would suffer if not permitted to testify via closed-circuit television from "severe" to "serious."   The purpose of the 2007 amendment was to liberalize the ability of a judge to declare a witness vulnerable (*see*

---

2. The factors were initially set forth in CPL 65.20(9), but that subsection was renumbered as CPL 65.20(10) (*see* L 2007, ch 548, § 2; *Matter of Noel O.*, 19 Misc 3d 418, 431).

Senate Mem in Support, 2007 McKinney's Sessions Laws of NY, pp 2045-2046). Legislative history further reveals that the 2007 amendment was enacted in recognition of the fact that the two-way closed circuit television procedure was integral to protect a child witness's mental and emotional health, and "to maintain that witness's ability to communicate successfully with the finder of fact, thereby ensuring the validity and accuracy of the testimony" (*see* Senate Mem in Support, 2007 McKinney's Sessions Laws of N.Y. at 2045-2046).

A court's determination that a child witness is vulnerable "does not, standing alone, permit the child witness to give televised testimony from the testimonial room in the absence of the defendant" (*People v Cintron*, 75 NY2d at 255). Rather, under the present statutory scheme, once the court has determined that a child witness is vulnerable based upon consideration of the relevant statutory factors, it must next "make a specific finding as to whether placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the child witness will suffer severe mental or emotional harm" (CPL 65.20[13]). If such a finding is made, the defendant shall remain in the courtroom during the testimony of the child (*see id.*).

In the instant case, the Supreme Court made its initial determination that the child might be a vulnerable witness triggering the need to conduct a hearing on this issue pursuant to CPL 65.20(11) based on the fact that the child could not speak and appeared "terrified" when she was questioned about the crime in the defendant's presence. After the hearing, the Supreme Court concluded that the child was indeed suffering from severe mental or emotional harm based both upon its own observations and the social worker's testimony that the child was afraid to talk about the incident with the defendant in the room (*see People v Watt*, 84 NY2d 948, 952). Although the social worker was not qualified as an expert, the presence of expert testimony is simply a factor to be considered in determining whether a child witness is vulnerable (*see* CPL 65.20[10][l]), not a mandatory requirement (*see People v Cintron*, 75 NY2d at 265; *People v Paramore*, 288 AD2d 53, 54).

Upon our review of the record, we find that the Supreme Court properly declared the child to be a vulnerable witness. Since the child was seven years old at the time of the trial, she was "particularly young" (*People v Lindstadt*, 174 AD2d 696, 697 [nine-year-old witness is particularly young]; *People v Guce*, 164 AD2d 946, 948 [eight-year-old witness is particularly young]). Further, the defendant occupied a position of authority, since he was the child's great uncle by marriage, the

August 14, 2013                                                                                    Page 6.

PEOPLE v BELTRAN, RUBEN

child regarded him as a family member (*see People v Pierce*, 266 AD2d 721), he was responsible for the care of the child at the time the crime occurred, and he had frequent contact with her *(see Matter of Noel O.*, 19 Misc 3d at 432). Thus, two of the factors set forth in CPL 65.20(10) were established by clear and convincing evidence (*see People v Martin*, 294 AD2d 850, 850-851; *People v Pierce*, 266 AD2d 721; *People v Ramos*, 203 AD2d 599). It is also clear from the record that the emotional trauma the child experienced when she attempted to testify in open court about the crime substantially impaired her ability to communicate with the jury. Under all of the circumstances, the Supreme Court's determination that the child was a vulnerable witness is supported by clear and convincing evidence in the record (*see People v Barreto Mejia*, 101 AD3d 1040; *People v Biavaschi*, 265 AD2d 268, 268-269).

Furthermore, the child was properly permitted to testify outside of the physical presence of the defendant. The Supreme Court's observations of the child when she was questioned in the courtroom, and the hearing testimony of the social worker, provided clear and convincing evidence that the cause of the child's severe emotional upset was the defendant's presence in the room (*see People v Paramore*, 288 AD2d at 54). Accordingly, the record supports the requisite specific finding that placing the defendant and the child in the same room during the testimony of the child would contribute to the likelihood that the child would suffer "severe mental or emotional harm" (CPL 65.20[11]).

We reject the defendant's contention that CPL article 65 was unconstitutionally applied in this case so as to deprive him of his Federal and State constitutional right to confront the witnesses against him. The Court of Appeals has ruled that live, televised testimony does not deprive a defendant of his or her constitutional right to confrontation if it is done for an important public policy reason and reliability is assured by preservation of the confrontation-related rights of "testimony under oath, the opportunity for contemporaneous cross-examination, and the opportunity for the judge, jury, and defendant to view the witness's demeanor as he or she testifies" (*People v Wrotten*, 14 NY2d 33, 39, *cert denied* _____US_____, 130 S Ct 2520, citing *Maryland v Craig*, 497 US 836, 851). In *People v Wrotten*, the Court of Appeals noted that Judiciary Law § 2-b(3) authorized a court of record "to devise and make new process and forms of proceeding, necessary to carry into effect the powers and jurisdiction possessed by it," including authorizing two-way televised testimony at a criminal trial, under circumstances where the Legislature has not authorized such testimony by statute, if there were "exceptional circumstances" present (14 NY3d at 40).

August 14, 2013                                                                                                    Page 7.

PEOPLE v BELTRAN, RUBEN

In *Maryland v Craig* (497 US 836), the United States Supreme Court considered the constitutionality of a Maryland statute which authorized a child witness in a child abuse case to give one-way televised testimony, whereby the child is visible to those in the courtroom, but those in the courtroom were not visible to the child. The Court determined that, under the Confrontation Clause, a face-to-face confrontation was preferred but not "indispensable" (*id.* at 849). It further ruled that a face-to-face confrontation could be dispensed with upon a showing of necessity, and the showing required by the Maryland statute—that the child will suffer "serious emotional distress such that the child victim cannot reasonably communicate" if he or she were required to testify in the presence of the defendant (former Maryland Cts & Jud Proc Code Ann § 9-102[a][1][ii]; now Maryland Crim Proc Code Ann 11-303[b][1])—satisfied that standard. If the trauma to the child was not the result of the presence of the defendant, face-to-face confrontation with the defendant could not be dispensed with, since, in those circumstances, the child could testify in less intimidating surroundings with the defendant present (*see Maryland v Craig*, 497 US at 856).

In the instant case, those standards were met. The evidence established the likelihood that the child would suffer severe mental or emotional harm if required to testify in the defendant's physical presence as required by the New York statute (CPL 65.20[12]). Moreover, in contrast to *Maryland v Craig*, here, the child testified by way of two-way closed circuit television, so that she could see the defendant during her testimony, and the defendant could see her. This two-way system allowed for face-to-face confrontation between the defendant and the child, thus preserving "the salutary effects of face-to-face confrontation [which] include (1) the giving of testimony under oath; (2) the opportunity for cross-examination; (3) the ability of the fact-finder to observe demeanor evidence; and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence" (*United States v Gigante*, 166 F3d 75, 80 [2d Cir], *cert denied* 528 US 1114).

Indeed, federal law permits a child victim to testify in federal criminal prosecutions outside the courtroom by way of two-way closed circuit television if the court finds that the child "is unable to testify in open court in the presence of the defendant," inter alia, because of fear, or "a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying" (18 USC § 3509[b][1][B][i],[ii]). Although "confrontation through a video monitor is not the same as physical face-to-face confrontation" (*United States v Yates*, 438 F3d 1307, 1315 [11th Cir]; *see United States v Gigante*, 166 F3d at 81), there is no constitutional infirmity if there

has been a case-specific finding of necessity in furtherance of an important public policy (*see United States v Yates*, 438 F3d at 1315). That test was satisfied in this case. Further, since the child appeared and was cross-examined by the defendant, the defendant's confrontation rights, as described in *Crawford v Washington* (541 US 36), were not violated (*see People v Whitman*, 205 P 3d 371, 381 [Colo Ct App], *cert denied* _____ US _____, 2008 WL 2581401, 2008 colo LEXIS 704, citing *Crawford v Washington*, 541 US at 59 n 9).

Turning to the other issues raised by the defendant, we conclude that the Supreme Court providently exercised its discretion in denying the defendant's motion pursuant to CPL 200.20(3) to sever certain charges in the indictment (*see People v Martinez*, 69 AD3d 958, 959; *see also People v Lane*, 56 NY2d 1, 10). The charges in the indictment were properly joined pursuant to CPL 200.20(2)(c), since the crimes share common elements and the criminal conduct at the heart of each crime is comparable (*see People v Pierce*, 14 NY3d 564, 574; *People v McAvoy*, 70 AD3d 1467). The defendant's claim that the Supreme Court failed to instruct the jury with respect to its duty to consider the crimes separately is unpreserved for appellate review (*see* CPL 470.05[2]; *People v Stewart*, 178 AD2d 448, 448) and, in any event, without merit (*see People v Harris*, 29 AD3d 387, 388; *People v Nelson*, 133 AD2d 470, 471).

However, the People correctly concede that the first and second counts of the indictment are multiplicitous, since those counts both allege a course of sexual conduct against a child in the first degree, although there was no interruption in that course of conduct against the child victim at issue (*see People v Moore*, 59 AD3d 809, 810-811; *People v Quinones*, 8 AD3d 589, 590).

The defendant's claims of ineffective assistance of counsel are not properly before this Court, as they involve matter dehors the record.

The defendant's remaining contentions, including those raised in his pro se supplemental brief, are without merit.

Accordingly, the judgment is modified, on the law, by vacating the conviction of course of sexual conduct against a child in the first degree under count two of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.

SKELOS, J.P., HALL, and AUSTIN, JJ., concur.

August 14, 2013

PEOPLE v BELTRAN, RUBEN

Page 9.

ORDERED that the judgment is modified, on the law, by vacating the conviction of course of sexual conduct against a child in the first degree under count two of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.

ENTER:

Aprilanne Agostino
Clerk of the Court

# State of New York
# Court of Appeals

BEFORE:  HON. JONATHAN LIPPMAN, Chief Judge

THE PEOPLE OF THE STATE OF NEW YORK,

                                          Respondent,

    -against-

RUBEN BELTRAN,                 Appellant.

**ORDER
DENYING
LEAVE**

      Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure

Law § 460.20 from an order in the above-captioned case;*

      UPON the papers filed and due deliberation, it is

      ORDERED that the application is denied.

Dated:      **JUN 1 0 2014**

                                                      Chief Judge

*Description of Order: Order of the Appellate Division, Second Department entered August 14, 2013, affirming a judgment of the Supreme Court, Kings County rendered June 23, 2010.

*Dagomed*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:   CRIMINAL TERM, PART 22

THE  PEOPLE  OF  THE  STATE  OF  NEW  YORK

DECISION AND ORDER

- vs -

HON.  JOEL M. GOLDBERG
IND. NO. 880/09

DATE: March 16, 2012

RUBEN BELTRAN

**DEFENDANT.**

The defendant's motion, dated October 19, 2010 and filed December 3, 2010, pursuant to CPL 440.10 (1) (f) and (h), to vacate the June 23, 2010 judgment convicting him after a jury trial of Course of Sexual Conduct Against a Child in the First Degree (2 counts pertaining to Vanessa Flores) and Sexual Abuse in the First Degree (pertaining to Susan Rodriguez) and sentencing him to concurrent terms of 25 years and 20 years post-release supervision on the two Course of Sexual Conduct counts to run consecutively to a sentence of seven years and ten years post-release supervision on the Sexual Abuse count (Gerges, J. at trial and sentence), upon consideration of all the papers and proceedings herein, is denied.

The defendant had been charged with committing acts of rape and sexual abuse against his niece, Vanessa Flores between June 1, 1998 and August 31, 2001 when she was between 5 and 8 years old.  He was also charged with touching the vagina of 5-year-old Susan Rodriguez on March 12, 2008.

1

## Procedural Background

The defendant was represented at trial by 18-B appointed counsel Edward Friedman. After trial, Mr. Friedman requested to be relieved, because the defendant wished to file a motion to set aside the verdict based on ineffective assistance of counsel. Justice Gerges granted the request and assigned Harold C. Baker who has continued to represent the defendant in his post-verdict and post-sentencing proceedings.

The motion to set aside the verdict was denied in an oral decision by Justice Gerges except that the Court vacated two misdemeanor convictions for Endangering the Welfare of a Child based on the expiration of the Statute of Limitations (sentencing minutes of June 23, 2010, at 5). The claims made in that motion concerning ineffective assistance of counsel were denied because they were, in part, based on allegations of off-the-record events.

## The Motion

Subsequently, almost six months later, the defendant filed the instant motion on December 3, 2010. The motion claimed trial counsel was ineffective, because he failed to conduct research into or consult with or call an expert at trial in the fields of (1) child sexual abuse, (2) child sexual abuse syndrome, and (3) sexually transmitted diseases despite his client's repeated requests to do so and that trial counsel was also ineffective for failing to call the defendant's wife, Migdalia Beltran, as a defense witness.

The motion alleged that trial counsel should have called an expert to rebut the testimony of the People's witness, Dr. Lorne Nayan, that an examination of the vagina and hymen of Vanessa Flores revealed tears that would be consistent with repeated acts of forcible sexual intercourse by an adult. The motion also alleged that trial counsel's

2

failure to consult a proper expert prevented him from effectively cross-examining Dr. Nayan.

Further, the motion alleged that trial counsel did not effectively challenge the expert psychological evidence offered by Dr. Don J. Lewittes offered to explain the delay in the victim reporting the defendant's sexual acts as well as her failure to recall the details of these alleged events. The motion asserted that trial counsel should have called an opposing expert and also should have more thoroughly researched the field so as to effectively cross-examine Dr. Lewittes.

In addition, the motion alleged that the defendant told his trial counsel that he suffered from an incurable sexually transmitted disease, human papillomavirus (HPV), and that the defendant's wife had contracted the disease from him. The motion asserted that defense counsel was ineffective in failing to establish at trial that the absence of a finding of this disease in Vanessa Flores would have established that he did not, as alleged, repeatedly have sexual intercourse with her.

The motion alleged that not only would the defendant's wife have testified that the defendant transmitted HPV to her, but also that she would have provided testimony concerning possible motives for the prosecution witnesses to falsify or embellish their testimony against the defendant. Also, according to the motion, she could have testified as to the defendant's impaired hearing, which would have cast doubt on Vanessa Flores' testimony that, on one occasion, the defendant stopped having sex with her, because he heard someone approaching. Further, the motion alleged that it was the defendant's wife and not the defendant who regularly babysat Vanessa Flores, which would have contradicted Vanessa Flores' testimony.

3

As will be noted, the claims regarding trial counsel not calling the defendant's wife as a witness and the claims regarding the defendant's alleged HPV were effectively abandoned by the defense in the subsequent proceedings when the defense, despite her availability, did not call the defendant's wife as a witness at the hearing held on this motion.

## The People's Answer

In papers filed February 7, 2011, the People contended that the defendant's motion should be denied without a hearing. Their papers contain a summary of the relevant portions of the trial testimony, at 3 - 17.

The People submitted a supporting affidavit from defendant's trial counsel in which he stated: (1) that he had been a practicing attorney for 25 years focusing primarily on criminal defense; (2) that the had tried close to 100 felony cases including numerous trials involving allegations of rape and sexual assaults on both children and adults; (3) that after reviewing the discovery materials and medical records of Vanessa Flores he contacted Dr. Gary Medows, a pediatrician and an expert witness on the 18-B panel. The affidavit stated that after consulting with Dr. Medows, it was counsel's professional opinion "that a doctor would not have been able to significantly contradict the People's medical evidence or advance the defendant's claim that he could not have committed the crimes [due to the absence of evidence that HPV was present in Vanessa Flores];" (4) that his research disclosed that a carrier of HPV does not necessarily transmit the virus with every sexual contact [an assertion that the defense papers have nowhere refuted]; (5) that, in fact, the defendant has never been diagnosed with HPV or suffered any HPV symptoms [another assertion not refuted by the defense]; (6) that, therefore, he concluded it would not serve the defendant's interests to call an expert on HPV as a trial witness; (7) that cross-examination of the People's medical and psychological experts would be more

4

effective than calling defense experts, because this tactic would eliminate the opportunity for the People to cross-examine the defense experts and avoid a "battle of experts" which could be lost by the defense; and (8) that calling the defendant's wife would not be helpful – a conclusion he reached after speaking with her and evaluating how the jury would assess her emotional stability, credibility, and the fact that she was initially supportive of the prosecution and had been herself, the victim of prior domestic violence acts by the defendant.

The People's answer also noted that the defense motion failed to contain any affidavits from purported experts who would support the defense claims that experts should have been consulted or called as defense witnesses at trial to undermine the People's medical and psychological testimony nor did the defense motion contain an affidavit from the defendant's wife supporting the defense claims made about her purported testimony.

The People's answer, at 9 - 16, also detailed trial counsel's performance contending that the defendant, in fact, received effective assistance.

In particular, the People noted that trial counsel's decisions not to call expert witnesses in rebuttal and not to call the defendant's wife were part of a well-planned and well-executed trial strategy, contending that the allegations against the defendant were the result of family animosity towards him.  Trial counsel elicited testimony that permitted him to argue that Vanessa Flores did not behave like a child that had been sexually abused, had never showed an unwillingness to be alone with the defendant, and had not told anyone about the alleged sexual abuse for seven years even though she had a close and trusting relationship with her mother.  Further, trial counsel elicited the fact that when Vanessa initially spoke about the alleged abuse to her guidance counselor, her mother, the

police, and the assistant district attorney, she said it happened only one time, not many times over a period of years as she later claimed at trial.

The People's answer also pointed out that trial counsel skillfully cross-examined seven-year-old Susan Rodriguez, eliciting from her that her brother and sister were on the same bed with her at the time of the alleged sexual abuse of her.  Further, trial counsel's cross-examination of Susan's mother revealed that she allowed the defendant to repeatedly watch her children despite her claim that the defendant had allegedly molested her when she was a child.

The People's answer also noted that trial counsel reinforced his argument that the family had a motive to lie about the defendant by eliciting testimony that the defendant's landlord and friend of Susan Rodriguez's mother, Charles Donascimento, sometimes argued with the defendant and did not want him living in the apartment.

Further, the People's answer, at 12 - 13, contended that trial counsel effectively cross-examined the People's expert witnesses, Dr. Don J. Lewittes and Dr. Lorne Nayan, thereby demonstrating that he both adequately prepared to cross-examine them and that his decision not to call expert witnesses in rebuttal was consistent with reasonable professional judgment.

As to Dr. Lewittes, trial counsel established that: (1) he did not interview either Vanessa or Susan [which would have been beyond the scope of his responsibilities in this case since he was called merely to testify about the child sexual abuse syndrome in general terms]; (2) that he was being paid for his testimony; (3) that his court testimony in the past has almost always been on behalf of the prosecution; and (4) that young children are vulnerable to being improperly influenced by improper and suggestive interviewing as

was the situation in two high-profile cases of child sexual abuse in California and New Jersey.

As to Dr. Nayan, who examined Vanessa Flores, trial counsel elicited many points helpful to the defense: (1) that the date of the tears in Vanessa's hymen could have been caused within one year or even one week before the examination; (2) that the tears could have resulted from consensual as well as forcible intercourse; (3) that the tears would be expected to have resulted in bleeding [yet, no witness testified to having observed blood at the time of the alleged crimes]; and (4) that a male infected with HPV, even though having no visible signs of the virus, could transmit the virus to a sexual partner and that repeated contacts with an infected partner increased the chances of also becoming infected [which, when combined with the defendant's subsequent testimony that he was infected with HPV, allowed trial counsel to argue that the absence of evidence that Vanessa had HPV created a reasonable doubt that he had repeated sexual intercourse with her].

**The Hearing**

The trial judge, Justice Gerges, retired prior to the People's answer being filed. The motion was administratively assigned to the Hon. Desmond Greene who in May of 2011 ordered a hearing on the motion and attempted to schedule a hearing during the summer of 2011.  However, Judge Greene was reassigned to duties which would not allow him time to do the hearing, and the matter was again administratively reassigned. The matter was before this Court on September 27, 2011, and the hearing was held on November 4, 2011.

The defense called as its only witness Dr. Gary Medows, the pediatrician with whom Mr. Friedman consulted.  His testimony is summarized in the People's post-

7

hearing memorandum, at 2 - 6, and in the defendant's post-hearing affirmation, at paragraphs 5 - 6.

The defense did not call any witnesses at the hearing to provide expert opinion either to contradict the trial testimony of the People's expert witnesses or to suggest areas of cross-examination neglected or mishandled by defendant's trial counsel. Neither did the defense present any evidence at the hearing to contradict the pre-trial opinions given by Dr. Medows to trial counsel.

Further, the defense did not call the defendant's wife to provide the testimony that the defense motion claimed trial counsel should have elicited from her during the trial. The hearing record reflects that a conscious choice was made by the defense not to call her as a witness even though she was present in the courthouse.

Thus, the assertions of ineffective assistance of counsel for not calling the defendant's wife as a witness at trial have been abandoned. No reference to these claims has been made in the post-hearing submissions by the defense. In any event, the defense failed to provide a factual basis to establish that trial counsel's strategic decision not to call her as a witness prejudiced the defendant in any way or constituted ineffective assistance of counsel.

After the defense rested at the hearing, the People called trial counsel, Edward Friedman, to explain the reasons for the decisions he made. These reasons were consistent with those stated in his above-discussed affidavit.

Trial counsel's trial strategy was to attack the credibility of both complainants, highlight the delayed outcry of Vanessa Flores, demonstrate the defendant's lack of

8

access and opportunity to commit the crimes, and argue that the defendant was being falsely accused by family members who did not like him. Trial counsel also planned to discredit the medical testimony pertaining to Vanessa Flores based on his consultations with Dr. Medows. As to the HPV issue, trial counsel concluded that calling an HPV expert would not be helpful, because he could not prove the defendant actually had HPV or that he was the source of his wife's HPV infection, and because he had elicited enough information from the People's expert to make arguments in his summation about the subject.

In addition to consulting with Dr. Medows, trial counsel also hired an investigator.

With respect to Dr. Lewittes, trial counsel reviewed transcripts of Dr. Lewittes' testimony from previous trials and reviewed articles on child sexual abuse accommodation syndrome. Trial counsel concluded that cross-examining him was the most effective way to impeach him rather than to call an expert to refute his testimony.

**Post-Hearing Submissions**

By a motion dated December 9, 2011, the defendant moved to re-open the November 4, 2011 hearing to offer the testimony of two expert witnesses. The motion described the efforts made to obtain experts in the fields of "child sexual assault, infectious diseases/sexually transmitted diseases, and pediatric gynecology." The motion contained supporting affidavits of Dr. N.G. Berrill and Dr. Christina Guillen.

In an oral decision on December 21, 2011, the Court granted the motion to re-open the proceedings to the extent of accepting the affidavits as part of the record but declined to reopen the hearing.

9

## Conclusion

The defendant, based on the evidence following the hearing, failed to establish that trial counsel was ineffective (CPL 440.30 [6] [at a hearing the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion]), and the affidavits submitted after the hearing do not warrant re-opening the hearing. (CPL 440.30 [4] [b] [the moving papers do not contain sworn allegations of fact substantiating the claims of ineffective assistance of counsel]).

As stated by the Second Department in *People v Gavalo*, 87 AD3d 1014 (2d Dept. 2011):

> "A defendant in a criminal case has a constitutional right to the effective assistance of counsel" (*People v Larkins*, 10 AD3d 694, 694 [2004]; *see* U.S. Const. Sixth Amend.; NY Const., art. I, § 6). "However, what constitutes effective assistance is not and cannot be fixed with precision, but varies according to the particular circumstances of each case" (*People v Rivera*, 71 NY2d 705, 708 [1988]). Under the New York Constitution, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Benevento*, 91 NY2d 708, 712 [1988]). "While the inquiry focuses on the quality of the representation provided to the accused, the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*People v Benevento*, 91 NY2d at 714). Thus, "[i]solated errors in counsel's representation generally will not rise to the level of ineffectiveness, unless the error is 'so serious that defendant did not receive a fair trial' " (*People v Henry*, 95 NY2d 563, 565-566 [2000], *quoting People v Flores*, 84 NY2d 184, 188-189 [1994]).

10

Pursuant to federal constitutional standards set forth in *Strickland v Washington*, 466 US 668 (1984), a finding of ineffective assistance of counsel requires deficient performance which deprives a defendant of a fair trial to the extent that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

The defendant has not established that he received ineffective assistance of counsel under either the state or federal standards.

In this case, trial counsel made a reasonable professional decision, after consulting with Dr. Medows and researching Dr. Lewittes' prior testimony and the field of child abuse accommodation syndrome and reading articles on the subject not to call defense experts. Simple disagreement with defense counsel's strategies and tactics does not constitute ineffective assistance. *People v Caban*, 5 NY3d 143, 152 (2005); *People v Rivera*, 71 NY2d 705, 709 (1988); *People v Benn*, 68 NY2d 941 (1986).

In contrast to the facts in both *Gersten v Senkowski*, 426 F. 3d 588 (2d Cir. 2005) and *Lindstadt v Keane*, 239 F. 3d 191 (2d Cir. 2001), in this case trial counsel, after appropriate research and consultation, made an informed and professionally reasonable decision not to undertake a "battle of experts" to undermine the People's experts, and, instead, effectively cross-examined them to bring out concessions that he later used in his summation. *Harrington v Richter*, __ US __, 131 S.CT. 770, 788 - 790 (2011).

The two affidavits submitted in the defendant's post-hearing papers do not warrant re-opening the hearing, because the result of the hearing would not change. Neither affidavit, singly, or in combination, establishes that the defendant did not receive effective representation to the extent that trial counsel's strategic decision to rely on

11

cross-examination of the People's witness now warrants vacating the judgment.

The affidavit of Dr. Christina Guillen first asserted that trial counsel "should have moved, prior to trial, to have the complainant Vanessa Flores examined, interviewed, and evaluated by an expert in the field of pediatric sexual abuse, ... ."

As noted in the People's post-hearing memorandum, at 28, there is no provision in New York law to compel an injured crime victim, no less a rape victim, to submit to a medical examination by a doctor of the defendant's choosing. The failure of defense counsel, therefore, to make such an unprecedented request cannot be successfully criticized.

Dr. Guillen's second point is that the "tears" in Vanessa's hymen observed by Dr. Nayan would not be expected to have been the result of an event "nine years" after the event occurred because the hymen "heals quickly," [the examination was six years after the last reported incident - *See*, People's post-hearing memorandum, at 22, n.6] and that four "tears" in the hymen would be indicative of recent sexual activity.

Trial counsel's cross-examination of Dr. Nayan, however, elicited the concession that the observed injuries to Vanessa could have been as recent as one week prior to the examination.

Dr. Guillen's unsworn affirmation (see CPL 440.30 [1]) did not state that it was her opinion to a reasonable degree of medical certainty that the tears, which she did not personally observe, could not have been caused at the time of the alleged crimes. Therefore, regarding Dr. Guillen's proposed testimony, the age of the tears in her opinion would have been similar to the People's expert, differing only as to some uncertain degree

12

of likelihood of the tears being as old as the alleged sexual acts.

Trial counsel's further cross-examination of Dr. Nayan revealing the likelihood of bleeding and observable symptoms of pain from these alleged acts and his eliciting the absence of such evidence, certainly tended to show that the tears were caused by events subsequent to the time of the crime. The defense, therefore, has failed to show that Dr. Guillen's opinion would have resulted in a more favorable verdict to the defendant or that the failure of counsel to offer such testimony constituted ineffective assistance of counsel.

Therefore, the proposed testimony of Dr. Guillen as reflected in her affidavit did not warrant re-opening the hearing.

The affidavit of N. G. Berrill is also insufficient to warrant re-opening the hearing.

Dr. Berrill, demonstrating his lack of familiarity with the role of a forensic psychologist in criminal proceedings involving adult defendants, opined that trial counsel should have either moved for a forensic psychologist or psychiatrist to interview and evaluate the complainants with respect to delayed outcry, partial outcry, and the vulnerability of the complainants to suggestions by the police, social workers, and district attorney interviewers or, if not, at least called an expert to testify at trial that these examinations should have been done.

Dr. Berrill also averred that Dr. Lewittes' testimony was totally irrelevant, because he did not personally interview the complainants. The role of Dr. Lewittes was to acquaint the jury with the child sexual abuse syndrome in general so as to explain why some children delay in reporting these crimes, not to offer his "expert opinion" on the credibility of the complaining witnesses which is prohibited. *People v Spicola,* 16 NY3d

13

441, 465-466 (2011) *cert. denied,* __ US __, 132 S. CT. 400 (2011); *People v Carroll,* 95 NY2d 375, 387 (2000); *People v Green,* 92 AD3d 894, 2012 (2d Dept. 2012); *People v Rodriguez,* 91 AD3d 797 (2d Dept. 2012); *People v Williams,* 91 AD3d 679 (2d Dept. 2012).  Thus, Dr. Berrill further demonstrated his lack of understanding of Dr. Lewitts' role in the case.

In contrast to Dr. Berrill's criticism, trial counsel elicited from Dr. Lewittes that he never examined the complainants.  The prosecutor did not object to that line of questioning.  Nor was there a request by the People that the Court give a curative instruction to the effect that such an examination would not be permitted, because Dr. Lewittes' testimony was being offered solely to explain why *some* children delay in reporting sexual abuse, not whether these particular complainants were, in fact, abused. Thus, with this line of questioning, trial counsel was able to undermine the effect of Dr. Lewittes' testimony, the effect of which would have been lost if the defense also called an expert who similarly did not examine the complainants.

The balance of Dr. Berrill's affidavit offers his own opinions on the validity of some portions of Dr. Lewittes' testimony and on professional disagreements with some of the statements Dr. Lewittes gave at trial.  None of these matters pertain to the basic issues involved in the case.  Therefore, the affidavit of Dr. Berrill did not warrant reopening the hearing.

Accordingly, the defendant's motion to vacate the judgment is denied.

**SO ORDERED**

JOEL M. GOLDBERG
JUDGE

14

MAR 1 6 2012

# Supreme Court of the State of New York
## Appellate Division : Second Judicial Department

M138926
L/

JEFFREY A. COHEN, J.

2012-03477

DECISION & ORDER ON APPLICATION

The People, etc., plaintiff,
v Ruben Beltran, defendant.

(Ind. No. 880/09)

Application by the defendant, pursuant to CPL 450.15 and 460.15 for a certificate granting leave to appeal to this Court from an order of the Supreme Court, Kings County, dated March 16, 2012, which has been referred to me for determination.

Upon the papers filed in support of the application and the papers filed in opposition thereto, it is

ORDERED that the application is denied.

JEFFREY A. COHEN
Associate Justice

June 11, 2012

PEOPLE v BELTRAN, RUBEN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:   CRIMINAL TERM, PART 22

THE PEOPLE OF THE STATE OF NEW YORK

- vs -

RUBEN BELTRAN,

**DECISION AND ORDER**

HON. JOEL M. GOLDBERG

IND. NO. 880/09

DATE: NOVEMBER 25, 2014

RECEIVED
2014 DEC -2  P 5:00
KINGS COUNTY D.A. OFFICE
APPEALS BUREAU

_____

**DEFENDANT.**

_____

The defendant's *pro se* motion, dated September 3, 2014, pursuant to CPL 440.10 (1)(b) and (d), to vacate the June 23, 2010 judgment convicting him after a jury trial of two counts of Course of Sexual Conduct Against a Child in the First Degree (one of which was subsequently vacated) and one count of Sexual Abuse in the First Degree and sentencing the defendant to concurrent prison terms of 25 years plus 20 years post-release supervision on the two counts of Course of Sexual Conduct and a consecutive sentence of seven years on the count of Sexual Abuse and ten years post-release supervision upon consideration of the People's answer, dated November 19, 2014, is denied (Gerges, J. at trial and sentence).

Background

The defendant was convicted of acts of rape and sexual abuse against his niece, Vanessa Flores, during the periods from June 1, 1998 through January 21, 2001 and from February 1, 2001 through August 31, 2001, when she was between five and eight years-old. The defendant was additionally convicted at that same trial of touching the vagina of five year-old Susan Rodriguez on March 12, 2008.

1

Prior to sentencing, the defendant moved *pro se* to set aside the verdict based on ineffective assistance of counsel. The Court, at the request of trial counsel, Edward Friedman, relieved trial counsel and assigned Harold C. Baker to represent the defendant.

The Court subsequently denied the motion to set aside the verdict with the exception of vacating the defendant's conviction of two counts of Endangering the Welfare of a Child based on the expiration of the "Statute of Limitations" as to those charges. (See Sentencing Minutes of June 23, 2010 at 3-6).

Following the imposition of sentence, the defendant, represented by Mr. Baker, on December 3, 2010 filed a CPL 440.10 motion dated October 19, 2010 to vacate the judgment based on ineffective assistance of trial counsel. Included in this claim was an assertion virtually duplicating the basis for this motion: that trial counsel did not call at trial medical experts in the field of sexual assault injuries to challenge the conclusion given in the testimony of Dr. Lorna Nayan who was called as an expert witness at trial by the People.

Specifically, the defendant's prior motion, at unnumbered pages 2-3 of a supporting Memorandum of Law, argued that, "[h]ad counsel consulted with appropriate experts, he could have effectively challenged the basis of Dr. Nayan's conclusion regarding the injuries to the child's vagina and hymen. Dr. Nayan testified that upon examination on March 26, 2008, he discovered *tears to the child's hymen that he opined were caused by repeated forcible sexual intercourse with the child by an adult* (Trial transcript at 301-304). [emphasis supplied]. ... Counsel's decision not to consult with or call an expert precluded counsel from offering a potentially persuasive affirmative argument that the alleged victim's condition was not indicative or consistent with repeated forced sexual penetration."

Because the trial judge had retired, the prior CPL 440.10 motion was administratively assigned to the Hon. Desmond Greene who granted a hearing on the motion. Because Justice Greene subsequently was not available to hold the hearing, the

2

matter was administratively assigned to this Court. A hearing was held on November 4, 2011 where the defendant was represented by counsel, Mr. Baker.

Following a hearing on the motion and additional evidentiary submissions by the defendant, the motion was denied in a decision and order dated March 16, 2012.

Insofar as relevant to this motion, on the prior motion, the defendant did not produce at the hearing any witness to support the assertion in the motion that an expert witness, if called at trial by the defense, would either have refuted Dr. Nayan's assertion that the tears on the child's vagina were consistent with repeated forcible sexual intercourse or have demonstrated that trial counsel's cross-examination of Dr. Nayan was inadequate (See Decision of March 16, 2012 at 7).

In a post-hearing submission, defense counsel submitted an affidavit from Dr. Christina Guillen asserting that the tears observed in the child's hymen by Dr. Nayan would not be expected to be the result of an event "nine years" after the event because the hymen "heals quickly." (The examination by Dr. Nayan was approximately nine years after the first reported incident in 1998 and six years after the last reported incident in 2001.) However, as noted in the Court's decision, at 12, trial counsel's cross-examination of Dr. Nayan elicited the concession that the tears could have been as recent as one week prior to the examination.

On June 11, 2012, the Appellate Division denied the defendant's application, made by assigned appellate counsel, for leave to appeal from this decision. On August 14, 2013, the Appellate Division on the defendant's direct appeal modified the judgment by vacating the conviction and sentence on the second count of Course of Sexual Conduct Against a Child in the First Degree and dismissed that count, finding that it was multiplicitous with the first count in that both counts covered the same course of conduct. The judgment was otherwise affirmed. *People v. Beltran,* 110 AD3d 153 (2nd Dept. 2013). Leave to appeal to The Court of Appeals was denied. *People v. Beltran,* 23 NY3d 1018 (2014) (Lippman, C.J.).

3

## The Current Motion

The defendant's current *pro se* motion focuses on the trial testimony of Dr. Nayan. Whereas the prior CPL 440.10 motion asserted trial counsel was ineffective in challenging Dr. Nayan's testimony that the tears observed on the complainant's vagina could have been the result of repeated acts of forcible sexual intercourse occurring as long as nine years prior to the examination (while also stating that the tears could have been as recent as one week prior to the examination, and, if so, would not support a conviction), the defendant's current motion asserts that the prosecutor engaged in misconduct of reversible magnitude by arguing that Dr. Nayan's testimony supported a conclusion that the defendant committed the crimes charged.

The defendant argues that Dr. Nayan's conclusions were not reliable, because the trial record does not show that a "colposcope" was used in the examination (Defendant's Memorandum, "DM" at 1).

The defendant next argues, in an effort to undermine the validity of Dr. Nayan's testimony, that Dr. Nayan's testimony, "seems to have avoided the subject of multiple separate incidents. [And] the fact that after allegedly being penetrated by an adult, from the age of 5 until the age of 8, the complainant still had a hymen that could be seen by the naked eye" (DM at 2).

The defendant further argues that Dr. Nayan's conclusions were unreliable and "obsolete," because at the time of the examination, Dr. Nayan had not been informed that the complainant would later claim to have been raped multiple times by the defendant rather than only once (DM at 3). (However, the motion does not demonstrate that Dr. Nayan at the time of the trial testimony was unaware of the allegations of multiple rapes.)

The defendant argues that Dr. Nayan did not know that the defendant was charged with multiple acts of raping the complaining witness over a span of three years, and the prosecutor took advantage of Dr. Nayan's purported ignorance of this allegation when asking Dr. Nayan if the tears observed were consistent with "repeated" insertions of a penis into the vagina. Thus, the defendant argues, Dr. Nayan's affirmative answer

4

erroneously supported the prosecutor's subsequent argument in summation that multiple acts occurred at separate times rather than a conclusion that all the tears occurred during a single incident (DM at 4).

The defendant finally argues that the prosecutor's misrepresentation of Dr. Nayan's testimony regarding the rape allegations of Vanessa Flores had a prejudicial impact on the jury's consideration of the sexual abuse allegations of Susan Rodriguez requiring that the judgment regarding those charges should also be vacated (DM at 5).

<u>Discussion</u>

The People's answer raises three separate grounds for denying the motion all of which are valid.

First, the defendant's claims are entirely based on the trial record and, thus, the unjustifiable failure to raise them on direct appeal precludes their review on this motion. CPL 440.10 (2) (c).

Dr. Nayan's testimony and conclusions, as well as the prosecutor's purportedly improper comments thereon, were all part of the trial record. Thus, they cannot now be reviewed as a substitute for direct appeal. *People v. Cudrado*, 9 NY3d 362, 364-65 (2007); *People v. Cooks*, 67 NY2d 100, 103 (1986); *People v. Mobley*, 59 AD3d 741, 742 (2nd Dept. 2009).

The present claim, unlike the claim on the prior motion, is not based on a claim of ineffective assistance of trial counsel for failing to properly cross-examine Dr. Nayan, or failing to properly investigate the medical issues involved, or failing to call expert witnesses who could have refuted Dr. Nayan's conclusions. Those claims were based on matters *dehors* the record and were found to be without merit after a hearing held on the defendant's prior CPL 440.10 motion. Rather, the present claim is based purely on the trial testimony and the prosecutor's on-the-record comments and not on any evidence introduced at the hearing on the defendant's prior CPL 440.10 motion.

Second, the defendant's current claims could have been raised on his prior CPL

440.10 motion (where he was represented by counsel). Because the defendant was in a position to raise his current claim within the context of that prior motion – which included claims that Dr. Nayan's testimony was not adequately clarified due to ineffective assistance of trial counsel – but the defendant did not do so even after being afforded a hearing regarding Dr. Nayan's testimony, the current claims are denied. CPL 440.10 (3) (c); *People v. Graves*, 62 AD3d 900, 901 (2nd Dept. 2009), *People v. Cochrane*, 27 AD3d 659, 660 (2nd Dept. 2006).

Finally, the defendant's claims are without merit. The jury, based on trial counsel's cross-examination, was fully aware of the limited scope of Dr. Nayan's conclusions insofar as they could not distinguish whether the vaginal tears had existed weeks or years prior to the examination or whether they were the result of consensual or forcible intercourse. The prosecutor's arguments asserting these injuries were consistent with the People's theory of the case, although clearly not the only conclusion that could be drawn, was within proper bounds and did not misrepresent the evidence. It was for the jury to determine based on all the evidence in the case whether those arguments had any merit.

Because the prosecutor's arguments concerning Dr. Nayan's testimony were not improper, there was no unduly prejudicial spillover affecting the jury's consideration of the sexual abuse charge involving Susan Rodriguez.

Accordingly, the defendant's motion is in all respects denied.


**SO ORDERED**


JOEL M. GOLDBERG
JUDGE



ENTERED

NOV 2 5 2014

NANCY T. SUNSHINE
COUNTY CLERK

6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:  CRIMINAL TERM, PART 22

RECEIVED

2015 JAN 15 P 12: 22

KINGS COUNTY D.A. OFFICE
APPEALS BUREAU

THE PEOPLE OF THE STATE OF NEW YORK

DECISION AND ORDER

- vs -

HON. JOEL M. GOLDBERG

IND. NO. 880/09

DATE: JANUARY 6, 2015

RUBEN BELTRAN,

_____ DEFENDANT.

The Court has considered the defendant's *pro se* "Reply," dated December 18, 2014, as a motion to reargue this Court's decision, dated November 25, 2014, which, upon consideration of the People's Answer, dated November 19, 2014, denied the defendant's CPL 440.10 motion, dated September 3, 2014, to vacate the judgment.  The Court has also considered the defendant's "Addendum," dated December 29, 2014.

Upon consideration of the defendant's myriad papers, the Court adheres to its decision of November 25, 2014.

The defendant's current papers reiterate his prior claims which have been fully considered.  The defendant's current claims remain focused on the assertion that the prosecutor at trial disingenuously argued to the jury that the medical findings of Dr. Nayan "corroborated" the complainant's allegations that she had been raped multiple times over a period of between six to nine years prior to the examination even though the witness had conceded on cross-examination that the observed vaginal tears could all have been caused as recently as weeks rather than years before the examination.

1

Essentially, the defendant argues that the medical evidence was "useless," and the prosecutor should not have been allowed to argue otherwise. As noted in this Court's prior decision, this issue is a matter that was on the record, and, thus, could have been raised on the defendant's direct appeal. Therefore, it may not serve as a basis of granting a motion to vacate judgment. CPL 440.10 (2) (c).

The defendant's "Addendum" cites *People v. Jones,* ___ NY3d ___ ; 2014 WL7069803 (December 16, 2014) as authority requiring that he be granted a hearing on this motion. However, *Jones* does not require a hearing in this matter. In this case, all the factual issues necessary to decide the defendant's motion are already established by the trial record and supplemented by the hearing held on the defendant's prior CPL 440.10 motion.

As the defendant states in his Addendum, "[t]here is an obvious, commonsense mismatch between the medical evidence and [the victim's] allegation of multiple assaults." This assertion is supported by the trial testimony, and there is no need for a hearing concerning it. This testimony was known to the trial jury who, nevertheless, convicted the defendant, and the argument was of such little consequence that it was not even raised on the defendant's direct appeal in spite of the defendant's current efforts to give it more significance than it deserves.

Accordingly, the Court adheres to its decision of November 25, 2014 denying the motion to vacate the judgment.

**SO ORDERED**

JOEL M. GOLDBERG
JUDGE

2

JAN 0 6 2015

NANCY T. SUNSI...
COUNTY CLERK

OFFICE OF THE DISTRICT ATTORNEY, KINGS COUNTY
APPEALS BUREAU
NOTICE OF ENTRY DATED ___6/24/15___

## Supreme Court of the State of New York
## Appellate Division : Second Judicial Department

M194364
sl/

JEFFREY A. COHEN, J.

2015-02673

### DECISION & ORDER ON APPLICATION

The People, etc., plaintiff,
v Ruben Beltran, defendant.

(Ind. No. 880/09)

Application by the defendant, pursuant to CPL 450.15 and 460.15 for a certificate granting leave to appeal to this Court from an order of the Supreme Court, Kings County, dated January 6, 2015, which has been referred to me for determination.

Upon the papers filed in support of the application and the papers filed in opposition thereto, it is

ORDERED that the application is denied.

JEFFREY A. COHEN
Associate Justice

June 23, 2015

PEOPLE v BELTRAN, RUBEN

# State of New York
# Court of Appeals

BEFORE:  HON. LESLIE E. STEIN, Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

                                        Respondent,

                    -against-

RUBEN BELTRAN,

                                        Appellant.

**ORDER
DISMISSING
LEAVE**

Ind. No. 880/09

---

    Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure Law (CPL) § 460.20 from an order in the above-captioned case;*

    UPON the papers filed and due deliberation, it is

    ORDERED that the application is dismissed because the order sought to be appealed from is not appealable under CPL 450.90 (1).

Dated:  *Sept 11, 2015*

*Leslie Stein*
Associate Judge

*Description of Order:  Order of a Justice of the Appellate Division, Second Department, dated June 23, 2015, denying leave to appeal to the Appellate Division from an order of Supreme Court, Kings County, dated January 6, 2015.



SULLIVAN
P.O. BOX
FALLSBURG, NY 11237-0116

PRIORITY MAIL

PRO SE OFFICE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 CADMAN PLAZA EAST
BROOKLYN, NY 11201

Expected Delivery Day: 12/12/16

**USPS TRACKING NUMBER**

9505 5113 7713 5345 5241 33

LEGAL MAIL